UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| NORMA GUERRERO,<br><br>        Plaintiff,<br><br>v.<br><br>CITY OF KENOSHA HOUSING<br>AUTHORITY, DONNA COOK,<br>EDWARD GRAY, and<br>THOMAS HARTLEY<br><br>        Defendants. | Case No. 10-CV-1090-JPS<br><br><br>ORDER |

  On December 3, 2010, plaintiff Norma Guerrero ("Guerrero") filed this civil rights action pursuant to 42 U.S.C. § 1983 alleging that the defendants, City of Kenosha Housing Authority ("KHA"), Thomas Hartley ("Hartley"), Edward Gray ("Gray"), and Donna Cook ("Cook"), terminated her from the Housing Choice Voucher Program, commonly referred to as "Section 8," without due process of law on two separate occasions – first in June of 2007 and again in December of 2010. The plaintiff and the defendants have filed cross-motions for summary judgment. With the benefit of the parties' written submissions, the court is now prepared to rule on these motions.

1. Standard of Review

  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *McNeal v. Macht*, 763 F. Supp. 1458, 1460-61 (E.D. Wis. 1991). "Material facts" are those under the applicable substantive law that "might

affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In other words, in determining whether a genuine issue of material fact exists, the court must construe all reasonable inferences in favor of the non-movant. *Lac Courte Oreilles Band of Lake Superior Chippewa Indians v. Voigt*, 700 F.2d 341, 349 (7th Cir. 1983). However, where the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case," there is no genuine dispute as to any material fact because a complete failure of proof "necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). Where a party fails to address another party's assertion of fact, the court may deem it undisputed for purpose of the motion and may grant summary judgment if the movant is so entitled. Fed. R. Civ. P. 56(e)(2), (3); Civ. L. R. 56(b)(4).

2. Background

Beginning in August of 2002, Guerrero was a recipient of rent assistance benefits through the Section 8 Housing Choice Voucher Program in Kenosha, Wisconsin. In 2005, Guerrero notified the KHA that her niece would be moving in to assist her following a car accident. (Defs.' Proposed Findings of Fact [DPFF] ¶ 25). A few months later, Guerrero notified the KHA that her niece had moved out. (DPFF ¶ 25). To verify this assertion, the KHA sent an "Address Information Request" to the Kenosha Post Office, requesting the names of any individuals receiving mail at Guerrero's Section 8 residence. (DPFF ¶ 26). The KHA received notification from the postmaster that, although Guerrero's niece had, in fact, moved out, Brian Liddell, Guerrero's ex-husband, was receiving mail at her residence. (DPFF ¶ 26). Liddell was not authorized to lI've in Guerrero's Section 8 residence, and it was against Section 8 rules to allow someone to use the address as a mailing address if they were not listed on the lease and did not actually reside in the unit. (DPFF ¶ 28).

By letter dated December 1, 2006, the KHA gave notice to Guerrero that it was terminating her Section 8 rent assistance benefits, effective January 31, 2007. (Pl.'s Proposed Findings of Fact [PPFF] ¶ 9). The only reason for termination, as stated in the letter, are two check marks in a check-the-box form. (PPFF ¶ 9). One checked items states "unauthorized tenant living in assisted unit." (PPFF ¶ 9). The other checked item states: "Other: Unauthorized person is Brian Liddell." (PPFF ¶ 9). On December 4, 2006, Guerrero made a timely written request for a hearing to dispute the termination. (PPFF ¶ 10). The hearing was held on April 20, 2007. (PPFF ¶ 10). Guerrero testified at the hearing, denying that Liddell ever lived at her

Section 8 residence. (PPFF ¶ 11). Guerrero also presented several documents in support of her testimony. (PPFF ¶ 11). Pursuant to a letter dated May 9, 2007, the KHA terminated Guerrero's rent assistance benefits, effective June 30, 2007. (PPFF ¶ 13). The letter states the following reason for the termination: "Unauthorized tenant living in your assisted unit – Brian Liddell." (PPFF ¶ 13). The decision was made by the fair hearing committee of the KHA ("KHA Board"). (PPFF ¶ 14).

On June 7, 2007, Guerrero filed an action in the Kenosha County Circuit Court seeking certiorari review of the KHA Board's decision, arguing that both the initial notice and the written decision were inadequate. (DPFF ¶ 39). She sought both reinstatement of her Section 8 benefits and an award of the rental subsidy she would have received had her benefits not been terminated. (DPFF ¶ 39). On March 20, 2008, the circuit court issued a decision finding the notice insufficient, but remanding the case back to the Board with the directive that the KHA Board set forth in writing the reasons for the decision denying such benefits and the evidence relied upon in making that decision. (DPFF ¶ 40; PPFF ¶ 19). On June 18, 2008, Guerrero appealed the circuit court's decision to the Wisconsin Court of Appeals. (PPFF ¶ 20). On August 27, 2009, the appellate court found that the termination notice given to Guerrero was insufficient because it failed to specify the time period during which Liddell was living with Guerrero. (DPFF ¶ 41). The Court of Appeals reversed the decision of the circuit court and remanded the case with directions for the circuit court to grant appropriate relief. (PPFF ¶ 20).

In May 2010, the KHA readmitted Guerrero as a participant to the Section 8 program. (PPFF ¶ 22). On June 16, 2010, the circuit court issued a

decision: (1) reversing the May 9, 2007 decision of the KHA terminating Guerrero's Section 8 rent assistance; (2) remanding the matter to the KHA for further proceedings consistent with its remand and the decision of the Wisconsin Court of Appeals in relation to any future hearing that may be scheduled to terminate plaintiff's eligibility for Section 8 benefits; and (3) ordering the KHA to determine what remedies and/or rights, if any, Guerrero was entitled to for the wrongful termination of her Section 8 benefits. (DPFF ¶ 43; PPFF ¶ 24).

In September of 2010, Guerrero filed another appeal with the Wisconsin Court of Appeals, arguing that the circuit court erred by simply reversing the KHA's hearing decision and remanding it to the KHA. (DPFF ¶ 44). On September 21, 2011, the Wisconsin Court of Appeals issued a decision, affirming the circuit court's order reversing Guerrero's termination, clarifying the relief that Wisconsin courts have authority to order on certiorari review, and remanding the matter to the KHA for further proceedings. *Guerrero v. City of Kenosha Housing Authority*, NO. 2010AP 2305 (Wis. Ct. App. Sept. 21, 2011).

Meanwhile, by a letter, dated October 15, 2010, the KHA gave notice to Guerrero that her Section 8 benefits would be terminated again, effective December 31, 2010. The reason for the second termination, as stated in the notice, was for "providing false and/or incomplete information to the KHA regarding: Brian Liddell presumed to be residing in the assisted unit…from 7/8/2003 to 10/24/2006…." (PPFF ¶¶ 26-28). Guerrero requested another hearing to dispute the termination, which was held November 3, 2010. (DPFF ¶¶ 47-48). The hearing was conducted by defendants Hartley and Gray, both members of the KHA Board. (DPFF ¶¶ 10, 19). Guerrero testified at the

hearing and presented documents in support of her testimony. (PPFF ¶ 30). Gray and Hartley posed several questions to Guerrero at the hearing. (PPFF ¶ 31). Defendants Gray and Hartley made the decision to deny Guerrero's appeal and informed defendant Cook of their decision and reasoning immediately after the hearing. (PPFF ¶ 35). Thereafter, Cook wrote and signed the November 15, 2010 letter summarizing the decision and reasoning of Gray and Hartley. (PPFF ¶ 35). On December 3, 2010, Guerrero filed this § 1983 action. (Docket #1). With these facts in mind, the court now turns to the issues at hand.

3. Discussion

    3.1    Parallel Actions

As an initial matter, the defendants argue that the court should dismiss all of Guerrero's claims because she has pending certiorari actions in the Wisconsin state courts which are parallel. However, the Wisconsin Court of Appeals has issued a decision in Guerrero's certiorari review action challenging the KHA's 2007 termination of plaintiff's Section 8 benefits. In that decision, the court of appeals affirmed the circuit court's order, which had reversed Guerrero's termination and remanded the matter to the KHA for further proceedings. *Guerrero v. City of Kenosha Housing Authority*, No. 2010AP2305 (Wis. Ct. App. Sept. 21, 2011). Thus, at least with regard to her first cause of action – stemming from the 2007 termination – there is no danger of inconsistent outcomes. Accordingly, the court will not dismiss Guerrero's first cause of action under a parallel actions theory.

Guerrero still has pending in the state courts a certiorari proceeding relating to her second and third causes of action in this case. Nevertheless, the court finds it most expeditious to consider the merits of these claims,

rather than to dismiss them or stay the proceedings. In this regard, the court appreciates the factors that may support affording deference to the state court – most notably the need for conservation of judicial resources and comprehensive disposition of litigation. However, if the court looks to when Guerrero was first given notice that her Section 8 benefits would be terminated, it becomes clear that this housing saga has lasted close to six years. Therefore, the court concludes that, despite the risk of inconsistent outcomes and the waste of judicial resources, it is necessary to bring some closure to this case. Accordingly, the court will not dismiss Guerrero's second and third causes of action based on a parallel actions theory.

### 3.2 The 2007 Termination and Procedural Due Process

With regard to her 2007 termination from the Section 8 voucher program, Guerrero argues that the KHA violated her right to procedural due process and her rights under 42 U.S.C. § 1437(k) and 24 C.F.R. § 982.555(c) by failing to provide her with an adequate termination notice and decision letter. A procedural due process violation actionable under § 1983 occurs when: (1) the offending conduct was committed by someone who acted under the color of state law; (2) the actions deprive the plaintiff of a constitutionally protected property interest; and (3) the alleged deprivation occurred without due process of law. *See Easter House v. Felder,* 910 F.2d 1387, 1394 (7th Cir. 1990) (en banc) (citation omitted). The KHA concedes that the action taken by it was under the color of state law; thus, the first requirement is easily established. There is also no question that the termination of Guerrero's Section 8 benefits constitutes a deprivation of a constitutionally protected property interest. Thus, the final question is whether the alleged deprivation occurred without due process of law.

The due process clause of the Fourteenth Amendment "provides that certain substantive rights – life, liberty, and property – cannot be deprived except pursuant to constitutionally adequate procedures." *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 541 (1985). Thus, when property is taken by government action, due process generally requires that notice and an opportunity to be heard be provided before a constitutional deprivation occurs. *Id.* It is undisputed that Guerrero was not afforded meaningful notice, in that the termination notice provided to her by the KHA failed to detail the reasons for her termination with enough specificity. The Wisconsin Court of Appeals has held as much and the KHA does not appear to dispute this finding. The analysis, however, does not end here.

In *Parratt v. Taylor,* 451 U.S. 527 (1981), the Supreme Court held that, when the deprivation of a property right results from the "random and unauthorized" acts of state employees, providing meaningful pre-deprivation process is impracticable. 451 U.S. at 541, 543-44. The *Parratt* Court held that because the state cannot predict when such acts will occur, due process will still be satisfied provided the state makes available adequate post-deprivation remedies. *Id.* at 541, 544. In *Parratt,* the plaintiff, an inmate of a state prison, did not receive hobby materials he had ordered because normal procedures for the handling of mail at the prison were not followed. *Id.* at 530. He argued that the conduct of the prison officials deprived him of property without due process of law. *Id.* The Court explained that, although the plaintiff had been deprived of property by the state, "the deprivation did not occur as a result of some established state procedure. Indeed, the deprivation occurred as a result of the unauthorized failure of agents of the State to follow established state procedure." *Id.* at 543.

In arguing that the *Parratt* rule is applicable in this case and bars Guerrero's procedural due process claims, the defendant points to the Wisconsin Court of Appeals' decision in *Collins v. City of Kenosha Housing Authority*, 2010 WI App 100, 328 Wis.2d 798, 789 N.W.2d 342, a case applying the *Parratt* rule to the KHA's alleged deviation from regulatory requirements with regard to the termination of Section 8 vouchers. In *Collins*, the KHA terminated Connie Collins's Section 8 voucher because she failed to be home for two housing inspections. *Id.* Collins made a timely request for a hearing. *Id.* After the hearing, the KHA upheld the termination decision. *Id.* Collins never sought the state-provided remedy of review. *Id.* More than two years after the KHA's final determination, Collins brought an action under 42 U.S.C. § 1983 seeking reinstatement of her Section 8 voucher and monetary relief on the theory that the KHA deprived her of due process by failing to follow federal regulations applicable to the housing voucher program. *Id.* Collins appealed the circuit court's grant of summary judgment in favor of the KHA. *Id.* On appeal, the Wisconsin Court of Appeals found that any failure to follow government requirements on the part of the housing authority and board were random and unauthorized acts, as controlling Department of Housing and Urban Development ("HUD") regulations did not allow discretion that could have foreseeably resulted in constitutional violations. *Id.* at 811-12. The court noted that the case was not a situation where the state had established, by act or omission, a tolerated manner or practice of denying federal constitutional or legal rights, and that certiorari review was an adequate post-deprivation remedy. *Id.* Accordingly, it affirmed the circuit court's decision finding Collins did not have an

actionable 42 U.S.C. § 1983 claim for relief under the procedural due process clause. *Id.* at 814.

The defendant maintains that, in light of the court's holding in *Collins*, this court must find that Guerrero has no actionable § 1983 procedural due process claim against the KHA for failure to follow federal regulations. The defendant claims that any deviation by the KHA from federal or constitutional law was random and unauthorized and that the state provided an adequate post-deprivation remedy in the form of certiorari review.

However, there is a crucial difference between *Collins* and the case at hand. In *Collins*, the court noted that the case was not "a situation where the state had established, by act or omission, a tolerated manner or practice of denying federal constitutional or legal rights," thus, implying that, if the plaintiff had alleged it was established state procedure to violate the federal housing regulations in the termination of Section 8 benefits, she may have saved her § 1983 claim from dismissal. *Id.* at 811. Indeed, the Seventh Circuit has also suggested that there may be cases where the actions of certain state agents that clearly contravene established state procedure or policy, as contained in formal rules, statutes, and regulations, automatically become the state's new policy or procedure in all similar matters, rather than merely being categorized as a random and unauthorized deviation. *See Easter House*, 910 F.2d at 1402.

The *Easter House* court went on to explain that, in instances where a state's policy and procedure are established through a deliberative – or even legislative – process, which culminate in a formal pronouncement of the state's policy and procedure, "it is reasonable to believe that only the results of that more formal process reflect the state's established policy and

procedure." *Id.* at 1403. This would seem to be the case here. The KHA's procedure for giving notice to an individual of the termination of Section 8 benefits was clearly delineated by federal and constitutional law. Thus, Guerrero has a high threshold to cross if she is to prove that the KHA deviated from this formal procedure to such an extent that the actions of the KHA in sending deficient notices displaced the otherwise adequate existing state policy and procedure.

The *Easter House* court further noted that a single deviation from the formal pronouncement typically would not be found to reflect a new trend in state policy and procedure. *Id.* However, the court also stated that there could be two circumstances under which a shift in policy may occur:

> First, a shift occurs if the same formal steps which created the original policies and procedures are repeated and culminate in the pronouncement of new policy and procedures. Second, a state's position may change if the policymaker repeatedly deviates from the formally established policy and procedure until his practice and custom has replaced the formal policy and procedures.

*Id.* This case appears to reflect the latter situation. The KHA's procedure for pre-termination notice was clearly established through the legislative and judicial process. And, while the KHA had little discretion, if any, to deviate from the procedural requirements set out by federal and constitutional law, Guerrero maintains that the KHA did, indeed, do just that to such an extent that its sending out of deficient termination notices became its practice and custom. Thus, Guerrero is essentially arguing that because the KHA adopted this custom and practice (or established procedure), even though it clearly contravened the formal pronouncement of KHA procedure as contained in the federal regulations, the conduct was authorized and predictable, thus

taking it out of the realm of *Parratt.* In turn, Guerrero would hold the KHA liable under *Monell v. City of New York Department of Social Services,* 436 U.S. 658, 690 (1978), on the theory that the procedural due process violation was caused by "a widespread practice that is so permanent and well-settled that it constitutes a custom or practice," thus making it an action of the municipality itself. *Kujawski v. Board of Com'rs of Bartholomew County, Ind.*, 183 F.3d 734, 737 (7th Cir. 1999).

In support of her contention in this regard, Guerrero offers forty-seven termination notices sent by the KHA to Section 8 participants in the year leading up to Guerrero's termination. A review of the notices reveals that they are all check-the-box or fill-in-the-blank forms similar to the notice given to Guerrero. (Todd Decl. Ex. 2) (Docket #29-2). While many of the notices do appear to contain only bare and conclusory statements as to the basis for the termination, others contain considerable detail concerning the conduct that serves as the basis for the termination. (*Id.*). As such, the court finds there is a genuine issue of fact as to whether it was a custom, practice, or established procedure of the KHA to send termination notices in violation of the constitution and federal law. In making this finding, the court notes that the *Easter House* court found, as a matter of law, that a single deviation from adequate existing state procedure could not establish a new state procedure. 910 F.2d at 1403. However, here, the court finds that reasonable jurors could differ as to the conclusions to be drawn from the evidence and, therefore, a

jury must hear the issue. Accordingly, the court is unable to grant judgment to either party on Guerrero's first cause of action.[1]

### 3.3 The 2010 Termination

Guerrero presents two claims relating to her 2010 termination. First, she claims that the defendants terminated her Section 8 benefits on December 31, 2010, in retaliation for her continuing to litigate and appealing the state certiorari action, in violation of her rights under the First Amendment to freedom of speech and to petition the government for a redress of grievances. Second, she claims that the defendants terminated her Section 8 benefits in December of 2010, in violation of her rights to an impartial decision-maker and to have that decision-maker issue a written decision, as secured by the Due Process Clause and 42 U.S.C. § 1437d(k) and 24 C.F.R. § 982.555(e)(4), (6). The defendants have moved for summary judgment as to both of these claims. The plaintiff has moved for summary judgment as to only the due process claim.

#### 3.3.1 First Amendment Claim

A claim under § 1983 for retaliation in violation of the First Amendment requires a three-step analysis. First, the court must determine whether the plaintiff's speech was constitutionally protected. If so, then the plaintiff must prove that the defendant's actions were motivated by the

---

[1] The KHA argues that it is entitled to summary judgment on Guerrero's first cause of action – as well as her second and third causes of action – because Guerrero is not entitled to compensatory damages. However, even if the court found that Guerrero was not entitled to compensatory damages for any procedural due process violation that occurred, this would not necessary warrant summary judgment in the defendant's favor as nominal damages are available in a § 1983 action upon proof that the Due Process Clause was violated. *Carey v. Phibus*, 435 U.S. 247, 266 (1978).

plaintiff's constitutionally protected speech. Finally, if the plaintiff can demonstrate that his constitutionally protected speech was a substantial or motivating factor in the defendant's actions, the defendant is given the opportunity to demonstrate that it would have taken the same action in the absence of the plaintiff's exercise of his rights under the First Amendment. *See Belk v. Town of Minocqua*, 858 F.2d 1258, 1262 n. 6 (7th Cir. 1988); *Vukadinovich v. Bartels,* 853 F.2d 1387, 1389-90 (7th Cir. 1988).

The parties do not dispute that Guerrero's legal action challenging her termination from the Section 8 program was activity protected by the First Amendment. However, the parties do dispute the second part of the First Amendment retaliation analysis – that is, causation. The defendants argue that Guerrero has failed to offer any evidence that the 2010 termination was motivated by a retaliatory intent and, accordingly, the court should enter judgment in favor of the defendants. In response, the plaintiff contends there is ample evidence showing that her litigation activities were at least a motivating factor, if not the sole factor, for her 2010 termination. Specifically, Guerrero contends that statements of retaliatory intent by an agent of the KHA support her retaliation claim. Next, she argues that the timing of events leading up to the 2010 termination permits an inference of retaliation. The court will address each offer of evidence in turn.

First, to defeat summary judgment in the defendants' favor, Guerrero offers the statement of an attorney representing the KHA, made during a hearing in plaintiff's certiorari action, that "if [she] didn't accept what they were offering [she] could be in danger of being terminated again." (Pl.'s Resp. Defs.' Proposed Findings of Fact, Additional Facts ¶ 3). However, the defendant argues that this statement is inadmissible evidence pursuant to

Federal Rule of Evidence 408, as it was made in the course of settlement discussions.

Rule 408 forbids admission of conduct or statements made in the course of settlement negotiations only when offered to prove "liability for or invalidity of the claim or its amount." Fed.R.Evid. 408. Here, the alleged statement could easily be construed as part of a settlement discussion, and it is clearly being offered to prove liability for the retaliation claim. Therefore, the court finds that it is not admissible in evidence and cannot be used to defeat summary judgment in favor of the defendants.

Moreover, even if admissible, the statement does not necessarily permit an inference of causation, as the plaintiff contends. Indeed, it would appear that the KHA had a legal right to take the steps it took in reissuing a termination notice to Guerrero after the Wisconsin Court of Appeals found the first notice was insufficient and to undertake a second termination proceeding. What is more, the statement at issue was not made by the individual defendant – defendant Cook – responsible for the 2010 termination decision, nor is there any indication that Cook had knowledge of the KHA attorney's statement. Thus, the statement surely could not support any inference that Cook's actions in terminating Guerrero's Section 8 benefits in December of 2010 were retaliatory in nature. The same holds true for individual defendants Hartley and Gray, who simply presided over the termination hearing. Accordingly, the statement by the KHA attorney cannot be used to defeat summary judgment for the defendants on Guerrero's First Amendment retaliation claim.

The court also finds that evidence of the timing of events leading up to the 2010 termination is not sufficient to defeat summary judgment in the

defendants' favor. Though timing can serve as circumstantial evidence of retaliatory intent, here, the court finds that the timing of events does not suffice to establish a dispute substantial enough to withstand the motion for summary judgment. In this case, the crux of Guerrero's timing argument appears to be that she was issued her second termination notice almost exactly one month after she filed her appeal of the circuit court's order rejecting her request to be restored the value of the rental subsidy lost between her termination in 2007 and her reinstatement of benefits in May of 2010. Yet, this temporal proximity, standing alone, is not enough to raise a dispute as to causation. *See Hughes v. Derwinski*, 967 F.2d 1168, 1174 (7th Cir. 1992) (finding, in the context of a retaliation claim under Title VII, that the temporal proximity of the filing of a discrimination complaint and the issuance of disciplinary letters to plaintiff, standing by itself, does not sufficiently raise the inference that plaintiff's filing was the reason for the adverse employment action). Indeed, the fact remains that the KHA had the legal right to readmit Guerrero to the Section 8 program, to reissue her a constitutionally sufficient termination notice, and to conduct a termination hearing. Without more in the way of proof of causation, the court finds that the plaintiff has failed to establish a dispute substantial enough to preclude summary judgment in favor of the defendants as to her retaliation claim.

### 3.3.2 Procedural Due Process Claim

The court will also grant defendants' summary judgment on Guerrero's procedural due process claim as it relates to her 2010 termination. With respect to her 2010 termination, Guerrero argues that the defendants violated: (1) her right to an impartial decision-maker; and (2) the right to a written decision from the decision-maker setting forth the reasons for the

decision and the evidence upon which it was based. 24 C.F.R. §§ 982.555(e)(4) and (6).

However, because this is another procedural due process claim, there is a question of whether *Parratt* applies and precludes Guerrero's § 1983 claim in this respect. Unlike her procedural due process claim relating to the 2007 termination, Guerrero does not argue that the violation of her right to an impartial decision-maker and the right to a written decision by the decision-maker was the result of established state procedure. Thus, it would appear that any misconduct on the part of the KHA or the individual defendants was random and unauthorized because clear procedural requirements existed ensuring that individuals whose Section 8 vouchers were to be terminated were afforded procedural due process. *See Collins*, 328 Wis.2d at ¶ 26 (finding that "the state has taken care to establish a procedure to ensure that procedural due process is respected and to ensure that those whose rights have been violated have access to a statutory procedure designed to identify and correct errors.").

Having established that any alleged actions by the KHA contrary to Guerrero's right to an impartial decision-maker and a written decision by that decision-maker were random and unauthorized, the court now finds that Guerrero's third cause of action must be dismissed as she has failed to exhaust her state-provided post-deprivation remedy of certiorari review. According to the holding of *Collins*, as clarified in *Guerrero,* "a litigant cannot claim a deprivation of due process until he or she has in fact pursued the postdeprivation process provided." *Guerrero*, No. 2010AP2305 at ¶ 14 (citing *Collins*, 328 Wis.2d 798). Here, there is no dispute that Guerrero's certiorari action challenging her 2010 termination is still pending in the Wisconsin state

courts. Accordingly, at this time, Guerrero does not have an actionable 42 U.S.C. § 1983 claim for relief under the procedural due process clause.

Moreover, even if the court were to consider the merits of Guerrero's procedural due process claim, the court would still grant summary judgment in favor of the defendants as Guerrero has not offered any evidence establishing municipal liability. Specifically, Guerrero has not sufficiently shown that the alleged violations reflected KHA policy or that they were made or ratified by a person with final policymaking authority. *Kujawski v. Board of Com'rs of Bartholomew County, Ind.*, 183 F.3d at 737. Accordingly, the court will deny Guerrero's motion for summary judgment as to her third cause of action, and grant the defendants' motion for summary judgment in this regard.

Accordingly,

IT IS ORDERED that plaintiff's motion for partial summary judgment (Docket #25) be and the same is hereby DENIED;

IT IS FURTHER ORDERED that defendants' motion for summary judgment (Docket #30) be and the same is hereby GRANTED in part and DENIED in part; the defendant's motion for summary judgment as to the plaintiff's second and third causes of action is GRANTED; the defendant's motion for summary judgment as to the plaintiff's first cause of action is DENIED.

Dated at Milwaukee, Wisconsin, this 18th day of January, 2012.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge